# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | John W. Darrah | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| CASE NUMBER | 03 C 8880 | DATE | 11/15/2004 |
| CASE TITLE | Cental States, Southeast & Southwest Area Pension Fund vs. Schilli Corporation | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
  ☐ FRCP4(m)  ☐ Local Rule 41.1  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] For the reasons stated in the attached memorandum opinion and order, plaintiffs' motion for summary judgment is granted in part and denied in part; defendant's motion for summary judgment is granted in part and denied in part. The arbitrator's decision is affirmed. Enter Memorandum Opinion and Order.

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | | Document Number |
|---|---|---|---|---|
| | No notices required. | | number of notices | |
| | Notices mailed by judge's staff. | | NOV 16 2004 date docketed | |
| | Notified counsel by telephone. | | | |
| ✓ | Docketing to mail notices. | | docketing deputy initials | 39 |
| ✓ | Mail AO 450 form. | | | |
| | Copy to judge/magistrate judge. | | NOV 16 2004 date mailed notice | |
| MF | courtroom deputy's initials | Date/time received in central Clerk's Office | mailing deputy initials | |

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| CENTRAL STATES, SOUTHEAST AND SOUTHWEST AREA PENSION FUND; and HOWARD MCDOUGALL, Trustee, | ) ) ) ) | |
| Plaintiffs/Counter-Defendants, | ) ) | |
| v. | ) ) | No. 03 C 8880 |
| SCHILLI CORPORATION, a Missouri corporation, | ) ) ) ) | Judge John W. Darrah |
| Defendant/Counter-Plaintiff. | ) | |

DOCKETED NOV 1 6 2004

## MEMORANDUM OPINION AND ORDER

Plaintiff, Central States, Southeast and Southwest Area Pension Fund, a multiemployer pension plan, pursuant to §§ 3(37) and 4001(a)(3) of ERISA, 29 U.S.C. §§ 1002(37) and 1301(a)(3), filed suit against Defendant, Schilli Corporation, parent of a wholly-owned subsidiary corporation employer who contributed to the plan. The Multiemployer Pension Plan Amendments Act provides that when an employer withdraws from a multiemployer pension plan, it must pay a "withdrawal liability" in an amount approximately equal to the employer's proportionate share of the pension plan's unfunded vested benefits. 29 U.S.C. § 1381. A pension plan's unfunded vested benefits are computed by taking the difference between the present value of a pension plan's assets and the present value of the benefits the pension plan will be obligated to pay in the future. 29 U.S.C. § 1391.

A withdrawal can occur in one of two ways. An employer can effect a complete withdrawal from a pension plan by completely ceasing to make contributions to the plan on

39

behalf of their employees. 29 U.S.C. § 1383. An employer can make a partial withdrawal by reducing their obligations to their plan. 29 U.S.C. § 1385.

After an employer is assessed withdrawal liability by a pension plan, the employer may ask the plan to review the assessment. 29 U.S.C. § 1399(b)(2). If the employer is not satisfied with the review, it may initiate arbitration challenging the withdrawal liability assessment. 29 U.S.C. § 1401(a)(1). After the arbitration proceedings, any party can seek to enforce, vacate, or modify the arbitrator's decision by filing an action in federal court. 29 U.S.C. § 1401(b)(2).

In this case, an arbitrator found that Defendant had not incurred a partial withdrawal from Plaintiffs' pension fund in 1997 and that Defendant should have only been assessed fees for a complete withdrawal in 1998. Thereafter, Plaintiffs filed suit, seeking to vacate the arbitrator's decision. Defendant filed a counterclaim, seeking to modify the arbitrator's award by correcting the omission of principal and interest owed to Defendant. Presently before the Court are cross-motions for summary judgment.

Summary judgment is appropriate when no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *Cincinnati Ins. Co. v. Flanders Elec. Motor Serv., Inc.*, 40 F.3d 146, 150 (7th Cir. 1994). "One of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims or defenses . . . ." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Thus, although the moving party on a motion for summary judgment is responsible for demonstrating to the court why there is no genuine issue of material fact, the non-moving party must go beyond the face of the pleadings, affidavits, depositions, answers to interrogatories, and admissions on file to demonstrate, through specific evidence, that a genuine issue of material fact exists and to show

that a rational jury could return a verdict in the non-moving party's favor. *Celotex*, 477 U.S. at 322-27; *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 254-56 (1986); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986); *Waldridge v. American Hoechst Corp.*, 24 F.3d 918, 923 (7th Cir. 1994).

Disputed facts are material when they might affect the outcome of the suit. *First Ind. Bank v. Baker*, 957 F.2d 506, 507-08 (7th Cir. 1992). When reviewing a motion for summary judgment, a court must view all inferences to be drawn from the facts in the light most favorable to the opposing party. *Anderson*, 477 U.S. at 247-48; *Popovits v. Circuit City Stores, Inc.*, 185 F.3d 726, 731 (7th Cir. 1999).

An arbitrator's legal conclusions are reviewed *de novo*. *Central States, S.E. & S.W. Areas Pension Fund v. Midwest Motor Express, Inc.*, 181 F.3d 799, 805 (7th Cir. 1999) (*Midwest Motor*). An arbitrator's factual findings and application of law to fact are reviewed under the clearly erroneous standard. *Midwest Motor*, 181 F.3d at 804-05.

## BACKGROUND

The undisputed facts, for the purposes of these motions, are taken from the parties' Local Rule 56.1(a) & (b) statements of material facts and exhibits ("Pl.'s 56.1" and "Def's 56.1.").

Plaintiffs are a multiemployer pension fund, within the meaning of the Employee Retirement Income Security Act, which is funded by contributions from participating employers. Def.'s 56.1 ¶¶ 1, 6. Defendant owns a number of subsidiaries, including the employer, Truck Transport, Inc., which is obligated to contribute to the pension fund. Def.'s 56.1 ¶ 8.

The employer and a union were parties to a collective bargaining agreement. Pl.'s 56.1 ¶ 14. Thereafter, the employer and the union entered into a Participation Agreement that required

Truck Transport to make pension contributions on behalf of certain employees. Pl.'s 56.1 ¶ 15; Def.'s 56.1 ¶ 15. The Participation Agreement provided:

> This Agreement shall continue in full force and effect until such time as the Employer notifies the Fund(s) by certified mail (with a copy to the Local Union) that the Employer is no longer under a legal duty to make contributions to the Fund(s). The Employer shall set forth in the required written notice to the Fund(s) the specific basis upon which the Employer is relying in terminating its obligation to make contributions to the Fund(s). The Employer expressly agrees and hereby acknowledges by signing this Agreement that its obligation to make contributions to the Fund(s) shall continue until the above-mentioned written notice is received by the Fund(s) and the Trustees acknowledge the Employer's termination in writing.

Pl.'s 56.1 ¶ 17.

Plaintiffs became bound by the Participation Agreement after Plaintiffs' trustees approved and accepted the agreement's terms in writing on January 18-19, 1988. Def.'s Attachment C, Ex. B, ¶ 15; Def.'s Attachment E, Ex. 8. Plaintiffs communicated its acceptance of Defendant's participation in the pension fund by way of letter. Def.'s Attachment E, Ex. 8.

On November 21, 1997, the employees represented by the union voted to decertify the union as the employees' bargaining representative. Pl.'s 56.1 ¶ 25. After the decertification, the employer continued to submit contributions to the pension fund for approximately two more months, until 1998. Pl.'s 56.1 ¶¶ 28, 33. The employer, though, did not inform Plaintiffs of the decertification until approximately two years after the decertification vote. Pl.'s 56.1 ¶¶ 26-27.

Plaintiffs initially determined that the employer partially withdrew from the pension plan in 1998, when the employer stopped paying into the pension fund, and assessed a partial withdrawal. Pl.'s 56.1 ¶ 38. Plaintiffs also determined that Defendant completely withdrew from the pension fund in 1999, when none of Defendant's companies were still paying into the

pension fund, and assessed a "complete withdrawal." Pl.'s 56.1 ¶ 38. Defendant made these required payments in three monthly installments in 1999. Def's Attachment B, Ex. B. In total, Defendant paid $183,022.88. Def's Attachment B, Ex. B.

In September 2002, after Defendant initiated the arbitration, Plaintiff revised its estimates and concluded that Defendants were only liable for a withdrawal in 1997, the year of the union decertification. Pl.'s 56.1 ¶¶ 39, 41. However, because this assessment was greater than what Defendant had previously paid, Defendant paid an additional amount. Def.'s 56.1 ¶¶ 37, 38, 45.

Defendant then filed a demand for arbitration of the withdrawal liability assessment. Pl.'s 56.1 ¶ 44. The arbitrator concluded that Defendant did not withdraw from the pension plan when the union was decertified and determined that Defendant should have been assessed a substantially lesser withdrawal fee of $97,202.32, based only upon a complete withdrawal in 1998. Pl.'s 56.1 ¶¶ 46-47.

The arbitrator concluded that Defendant could be assessed fees for making its withdrawal payments in monthly installments, in the amount of $492.83. Def's Attachment B, Ex. B. Because Defendant overpaid its withdrawal amount, the arbitrator also determined that Defendant was entitled to interest only for the amount Defendant actually overpaid in its 1999 installment payments – $85,327.73[1] – as opposed to the total amount Defendant paid in 1999. Def.'s 56.1 ¶ 55; Def's Attachment B, Ex. B. The parties do not dispute the calculations, the

---

[1] This amount is computed by taking the total of the 1999 payments made by Defendant, $183,022.88; subtracting what Defendant should have been assessed, $97,202.32; and further subtracting the charge for making monthly installment payments, $492.83.

5

applicable interest rates, or whether Defendant is owed interest on the additional amount it paid in 2000. Def's Attachment B, Ex. B. Defendant contests other issues regarding the arbitrator's assessment.

## ANALYSIS

### *Liability*

At issue is whether a union decertification automatically withdraws an employer from participation in a pension plan and subjects the employer to withdrawal liability from the time of decertification, even if the union and the employer have a separate agreement requiring the employer to participate in the pension plan until notice of cancellation is provided. If so, as Plaintiffs argue, then the arbitrator's decision must be reversed and Defendant should be assessed withdrawal liability based on the union's decertification in 1997. If not, then the arbitrator's decision should be affirmed, subject to certain assessment modifications sought by Defendant. This issue is a legal determination that is reviewed *de novo*.

The expiration of a collective bargaining agreement does not always end an employer's obligation to fund a pension plan. Instead, a separate participation agreement may require the employer to fund the pension plan until certain conditions in the participation agreement are met, such as providing notice to the pension fund that the employer is no longer under a legal duty to make contributions. *E.g., Central States, S.E. & S.W. Areas Pension Fund v. Marine Contracting Corp.*, 878 F. Supp. 1176, 1179 (N.D. Ill. 1995) (*Marine Contracting*); *see also Central States, S.E. & S.W. Areas Pension Fund v. Gerber Truck Serv., Inc.*, 870 F.2d 1148, 1153-54 (7th Cir. 1989) (*Gerber Truck Serv.*) (stating that an employer must still contribute to a pension plan despite the absence of a valid collective bargaining agreement).

Based on the above, Defendant argues that the employer may still contribute to the pension fund even though a valid collective bargaining agreement was no longer in effect and that the Participation Agreement continued in effect until Defendant notified Plaintiffs of termination pursuant to the terms of the Participation Agreement.

According to Plaintiffs, Defendant's cases are all distinguishable and a union decertification terminates all employer-union agreements; therefore, withdrawal liability should be assessed from the time of decertification.

A union decertification terminates a collective bargaining agreement. *Retail Clerks International Ass'n v. Montgomery Ward & Co.*, 316 F.2d 754, 757 (7th Cir. 1963). Moreover, although Congress enacted 29 U.S.C. § 1145 to ensure that multiemployer benefit plans could rely on employers' promises to pay into a pension plan because the plan is obligated to pay pensions regardless of whether an employer actually made a contribution, an employer is also relieved of its statutory duties under 29 U.S.C. § 1145 to pay a pension fund under a collective bargaining agreement when a union is decertified. *Midwest Motor*, 181 F.3d at 803 ("The decertification also ended [the employer's] obligation to contribute to [the pension fund]."); *Louisiana Bricklayers & Trowel Trades Pension Fund v. Alfred Miller Gen. Masonry Contracting Co.*, 157 F.3d 404, 408 (5th Cir. 1998); *Sheet Metal Workers Int'l Ass'n v. W. Coast Sheet Metal Co.*, 954 F.2d 1506, 1509-10 (9th Cir. 1992) (*Sheet Metal*).

However, Plaintiffs' cases do not address the issue as to a separate participation agreement which obligates the employer to continue pension payments after decertification. Rather, the cases only consider the collective bargaining agreements.

7

In *Marine Contracting*, the collective bargaining agreement expired and the union was no longer the bargaining representative for the employees. *Marine Contracting*, 878 F. Supp. at 1177. However, there was a separate participation agreement between the employer and the pension fund. The participation agreement contained substantially the same termination language as in the Participation Agreement between the parties in this case as set out above. *Marine Contracting*, 878 F. Supp. at 1177. In *Marine Contracting*, as here, payments to the pension fund were required until a notice of cancellation was provided; this notice was not provided until after the union was no longer the bargaining representative for the employees. *Marine Contracting*, 878 F. Supp. at 1177. The court held that although the union was no longer the bargaining representative for any employees, the participation agreement obligated the employer to continue to make payments until the cancellation notice was provided. *Marine Contracting*, 878 F. Supp. at 1177-78. Moreover, the court found that there was nothing in the participation agreement "that makes its requirements contingent on the existence of the collective bargaining agreement. It is an independent obligation." *Marine Contracting*, 878 F. Supp. at 1178. There is no such requirement in the Participation Agreement between the parties in this case.

The *Marine Contracting* court also cited § 515 of ERISA, 29 U.S.C. § 1145, which provides: "Every employer who is obligated to make contributions to a multiemployer plan *under the terms of the plan or under the terms of a collectively bargained agreement* shall, to the extent not inconsistent with law, make such contributions in accordance with the terms and conditions of such plan or such agreement." *Marine Contracting*, 878 F. Supp. at 1178 (emphasis in *Marine Contracting*). Marine argued, as does Plaintiffs here, "that the obligations imposed by Section

8

515 require the existence of a collective bargaining agreement, and that after a collective bargaining agreement expires, jurisdiction under ERISA vanishes." *Marine Contracting*, 878 F. Supp. at 1178. However, the *Marine Contracting* court held that the pension plan was seeking to enforce a "contractual obligation to contribute under the Participation Agreement. Where an action for post-contract contributions arises from an independent contractual promise, jurisdiction under ERISA exists." *Marine Contracting*, 878 F. Supp. at 1179. Thus, that court concluded that "the language that Marine quotes does not make its obligations under the Participation Agreement dependent on the existence of a collective bargaining agreement." *Marine Contracting*, 878 F. Supp. at 1179. Likewise here, the termination language of the Participation Agreement binding on the parties does not depend on union representation pursuant to a collective bargaining agreement.

The holding in *Marine Contracting* is further supported by the policy which supports assessing multiemployer pension funds withdrawal liability. Multiemployer Taft-Hartley pension funds established under §§ 3(37) and 4001(a)(3) of ERISA, such as the Central States, Southeast, and Southwest Area Pension Fund, obtain contributions from multiple employers. As such, each contributing employer not only pays benefits for its employees but also pays benefits to employees of other contributing employers. ERISA was enacted to ensure that employees that are entitled to vested benefits will actually receive their benefits. *Midwest Motor*, 181 F.3d at 803. In particular, § 1145 guarantees that pension plans will receive contributions from participating employers; otherwise, the pension fund would have to pay benefits to covered employees regardless of whether an employer actually made its contribution. *Gerber Truck Serv.*, 870 F.2d at 1153-54. Participation agreements entered into between the pension fund and

9

the employer guarantee employees' benefits will not be adversely affected by an event which may invalidate a collective bargaining agreement.

Payments by Defendant to the pension fund despite the decertification of the union were in accord with the applicable terms of the Participation Agreement. Accordingly, withdrawal liability should have been assessed from the time the cancellation notice was provided. Defendant is only liable for a withdrawal assessment of $97,202.32.

*Damages*

Defendant disputes: (1) the amount of interest it is owed and (2) whether it can be assessed fees for the monthly installment payments.

As to the amount of interest owed, neither party disputes that once it is found that Defendant overpaid its withdrawal liability payments, Defendant is entitled to interest for the amount Defendant actually overpaid. As discussed above, the parties do not dispute the calculations, the applicable interest rates, or whether Defendant is owed interest on the additional amount it paid in 2000.

However, the parties dispute what amounts are subject to the interest payments. According to Defendant, the first assessment Plaintiffs issued was inaccurate because it was later re-assessed in 2000; therefore, Defendant should receive interest on the full $183,022.88 it paid in 1999. According to Plaintiffs, the two withdrawal assessments are related, and Defendant is only entitled to the difference between the amount it overpaid in 1999 and the amount Defendant actually owes; this results in interest on $85,327.73.

Defendant argues that a change in the withdrawal liability assessment should be governed by the same standard as used in Federal Rule of Civil Procedure 15(c)(2), which allows

10

amendments in pleadings to relate back if the amendment "arose out of the conduct, transaction, or occurrence" set forth in the original pleading. Defendant cites no authority for this proposition.

The overarching goal of computing an employer's proportional share of a pension fund's unfunded benefit, to relieve the burden placed on remaining employers, encourages accurate withdrawal liability assessments. *Masters, Mates, & Pilots Pension Plan v. USX Corp.*, 900 F.2d 727, 735-36 (4th Cir. 1990) (*USX Corp.*). Moreover, "[a]bsent prejudice to the opposing party, the mere fact that a revision is offered late in the arbitration process is not enough to bar it." *USX Corp.*, 900 F.2d at 736.

Defendant argues *USX Corp.* is distinguishable because it did not involve assessments issued under different legal theories. However, nothing in *USX Corp.* holds that assessments issued under different legal theories are new assessments, as opposed to revisions.

Under 29 U.S.C. § 1401(d), 29 C.F.R. § 4221.8(a)(2), and 29 C.F.R. § 4219.31(d), a pension plan is required to repay any overpayments and interest to an employer. Specifically, § 4219.31(d) provides that "[t]he plan sponsor shall credit interest on the overpayment from the date of the overpayment to the date on which the overpayment is refunded to the employer at the same rate as the rate for overdue withdrawal liability payments." The overpayment in this case occurred when the first withdrawal liability payment was assessed, in 1999. Therefore, Defendant is owed interest on $85,327.73.

With regard to whether Defendant can be assessed fees for paying in monthly installments, Pension Benefit Guaranty Corporation Opinion Letters 85-1 (Jan. 4, 1985) and 85-18 (July 24, 1985) authorize such monthly installment charges. Defendant offers nothing to the

11

contrary and, instead, claims that no installment payments were made because the new assessments were issued. This argument has been rejected above concerning the interest payments. Accordingly, Plaintiff were permitted to recover $492.83 in monthly installment charges.

## CONCLUSION

For the foregoing reasons, Plaintiffs' Motion for Summary Judgment is granted in part and denied in part; and Defendant's Motion for Summary Judgment is granted in part and denied in part. The arbitrator's decision is affirmed.

Dated: November 15, 2004

JOHN W. DARRAH
United States District Judge

12